*773 OPINION OF THE COURT
Joseph Gerace, J.
This is a motion for a preliminary injunction. Plaintiff, NYSARC, Inc., a not-for-profit organization operating a medical clinic in the City of Dunkirk, seeks to enforce a noncompetition clause in its contract with defendant, Saeed Syed, M.D., a physician who formerly practiced at the clinic, as well as against Hyder Alam, M.D., and Jill A. Muntz, a nurse-practitioner, neither of whom had any contractual relationship with the clinic.
In June 1999, plaintiff entered into a contract with Dr. Syed’s professional corporation, by which he agreed to provide doctors and other medical professionals to operate plaintiffs clinic. The agreement was to expire on May 31, 2002, but provided for four successive automatic renewal periods, unless either party provided notice of nonrenewal. On October 25, 2001, plaintiff did notify Dr. Syed that it would not be renewing the agreement. Negotiations between the parties continued, but were unsuccessful.
The agreement contained a noncompetition clause which, in pertinent part, prohibited Dr. Syed for two years from soliciting or treating any patient who had received services at any of plaintiffs facilities during the term of the agreement. It did not prevent Dr. Syed from practicing in any geographic area, as is common with such agreements. The clause also purported to bind Dr. Syed’s “agents, servants or employees.”
After leaving plaintiffs clinic, Dr. Syed opened his own offices across the street, along with the other defendants. Although the circumstances are disputed, defendants admit that they have been accepting patients formerly treated at plaintiffs clinic.
In order to obtain a preliminary injunction, plaintiff must establish a strong probability of ultimate success on the merits, as well as a prospect of irreparable injury if the relief is withheld. (Smith v Robilotto, 25 AD2d 454 [3d Dept 1966]; Cool Ins. Agency v Rogers, 125 AD2d 758 [3d Dept 1986], appeal dismissed 69 NY2d 1037.) In addition, plaintiff must show that a balancing of the equities favors it. (Newco Waste Sys. v Swartzenberg, 125 AD2d 1004 [4th Dept 1986].)
A covenant not to compete “will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer’s legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee.” (Arnold R. Leiboff, M.D., P.C. v *774 Pelaez, 249 AD2d 497, 497-498 [2d Dept 1998].) The subject covenant is certainly reasonable in time, as covenants that long and longer have been approved by courts in the past. (See, e.g., Albany Med. Coll. v Lobel, 296 AD2d 701 [3d Dept 2002] [in which a five-year covenant was approved].) This covenant contains no geographic restriction.
Plaintiff alleges that enforcement of the covenant is necessary to protect its legitimate interests because it is a not-for-profit organization operating its clinic at a loss and because the patient revenue is crucial to its ability to continue providing services. If it loses patients who have insurance or can otherwise afford to pay for services, it will be unable to continue serving those patients who cannot afford to pay for services. Numerous cases recognize that a medical practice’s interest in maintaining its patients is a legitimate interest worthy of protection by a covenant not to compete, even where the practice is a profit-generating venture. (See, e.g., Washington Sq. Inst. for Psychotherapy & Mental Health v Speciner, 259 AD2d 368 [1st Dept 1999].) It is also generally recognized that the loss of patients is an irreparable injury. (Albany Med. Coll., supra; Bollengier v Gulati, 233 AD2d 721 [3d Dept 1996].)
Defendants argue that it would be harmful to the general public to grant the requested relief, because it would limit patients’ choice of physicians in an admittedly physician-deficient area and because Dr. Syed and Dr. Alam have training that other physicians in the Dunkirk/Fredonia area lack. In particular, Dr. Alam alleges that he is the only physician with privileges at Brooks Memorial Hospital, the only hospital serving the area, who can perform certain life-saving procedures. Neither denies, however, that there are other physicians in Chautauqua County with such training. The availability of nearby physicians has been held sufficient to alleviate any possible public harm that could be caused by an injunction such as is requested here, even where patients would be required to cross state lines for treatment. (Bollengier, supra.) Further, plaintiff has expressed its consent to Dr. Alam treating its patients in the event of life-threatening emergency and an injunction could be worded to allow this.
It is apparent that the covenant here would not be unreasonably burdensome upon defendants. As they have argued, this is a physician-deficient area. As such, they should not suffer undue harm by being prohibited from treating plaintiff’s patients, as it can be expected that demand for physician services is high.
Thus, plaintiff has shown a strong probability of ultimate *775 success on the merits, at least as to Dr. Syed and his professional corporation. As to defendants Dr. Alam and nurse-practitioner Muntz, however, neither signed any agreement that would prevent them from competing with plaintiff. Individually, they have no such obligation. But both work as contractors of Saeed Syed, M.D., P.C., an entity which is bound by the agreement. They would, therefore, be affected and, to some extent, bound by an injunction granted against the corporation.
A balancing of the equities in this situation is difficult. Both sides make accusations of improper conduct by the other. However, the purpose of a preliminary injunction is to preserve the status quo until a decision is reached on the merits. (Watmet, Inc. v Robinson, 116 AD2d 998 [4th Dept 1986].) It would certainly be equitable to maintain the status quo in this case. And, in considering the equities of this situation, the court must consider the patients who are being tugged between the competing parties. Certainly, those patients have a strong interest in choosing what physician will provide their medical care. The papers establish that some patients have already chosen to follow the defendants to their new offices.
The court will, therefore, grant the motion for a preliminary injunction, in part. Dr. Syed and his professional corporation, as well as the other defendants, to the extent that they are acting as contractors of the professional corporation, are enjoined during the pendency of this action from treating any patients who received services from the Resource Center between June 1, 1999 and May 31, 2002, except that they shall not be enjoined from treating any such patients who have already sought services from defendants at their new offices by the date of this decision and order, provided that they keep exact records regarding each such patient, showing the dates of service, services provided and amounts billed.
It is, therefore, ordered that the motion for a preliminary injunction is granted, in part; and it is further ordered that plaintiff shall file an undertaking in the amount of $25,000, pursuant to CPLR 6312 (b) by October 1, 2002; and it is further ordered that once the undertaking is filed and notice of filing is received by defendants or their counsel, Dr. Syed and his professional corporation, as well as the other defendants, to the extent that they are acting as contractors of the professional corporation, are enjoined during the pendency of this action from treating any patients who received services from the Resource Center between June 1,1999 and May 31, 2002, except that they shall not be enjoined from treating any such patients *776 who have already sought services from defendants at their new offices by the date of this decision and order, provided that they keep exact records regarding each such patient, showing the dates of service, services provided and amounts billed.